UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GREY ROCK GATHERING AND MARKETING, LLC, | § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| TRINITY TANKERS LLC, and TRINITY ENTERPRISE LTD, | § § § | RULE 9(h) ADMIRALTY |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW COMES** Plaintiff, Grey Rock Gathering and Marketing, LLC ("Grey Rock"), and files its Original Complaint against Defendants Trinity Tankers LLC and Trinity Enterprise LTD (collectively, "Trinity"), and would respectfully show the Court as follows:

## PARTIES

1. Plaintiff Grey Rock is a domestic limited liability company organized under the laws of the State of Texas.

2. Defendant Trinity Tankers LLC is, on information and belief, a foreign limited liability company organized under the laws of the State of Delaware with its citizenship in the State of Connecticut. Trinity Tankers LLC does not maintain a registered agent in the State of Texas but may be served with process through its registered agent in Delaware, Universal Registered Agents, Inc., 300 Creek View Rd., Suite 209, Newark, Delaware, 19711. Pursuant to FED. R. CIV. P. 4(h)(1)(B), Trinity may also be served through its president, Alf Aanonsen, at 57 Anderson St., Stamford, Connecticut 06902 or wherever he may be found.

3. Defendant Trinity Enterprise LTD is, on information and belief, a foreign limited company organized under the laws of Anguilla. Trinity Enterprise LTD does not maintain a

registered agent in the State of Texas but can be served through its registered office in Anguilla, at The Hallmark Building, Old Airport Road, Suite 227, The Valley, Anguilla, BWI. Pursuant to FED. R. CIV. P. 4(h)(1)(B), Trinity may also be served through its president, Alf Aanonsen, at 57 Anderson St., Stamford, Connecticut 06902 or wherever he may be found within the United States.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction exists under 28 U.S.C. § 1333(1) as this is an action brought within the Court's original admiralty jurisdiction for breach of a maritime contract.

5. Subject matter jurisdiction also exists under 28 U.S.C. § 1332(a) as this is a civil matter with an amount in controversy exceeding the sum or value of $75,000 exclusive of interest and costs, and is between Plaintiff, a citizen of Texas, and Defendants, citizens of Delaware, Connecticut, and Anguilla.

6. In addition to original admiralty jurisdiction and diversity, this Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiff's claims sounding in Texas law as those claims are so related to the admiralty claim that they form part of the same case or controversy under Article III of the U.S. Constitution.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district. Moreover, an actual case or controversy of a justiciable nature exists between the parties involving their rights and obligations under contracts entered into in this district and to be performed in this district.

## NATURE OF THE CLAIM

8. This is an action for breach of a maritime contract and violation of the Texas Deceptive Trade Practices Act. Maritime contract actions are governed by general maritime law. Grey Rock's statutory claim arises under the Texas Deceptive Trade Practices Act, TEX. BUS. &

COMM. CODE § 17.46, because Trinity's tortious conduct may not fall within any recognized maritime tort.[1]

## FACTUAL BACKGROUND

9. Grey Rock is in the business of buying, selling, and trading hydrocarbon-based commodities. At times, Grey Rock's business requires it to charter vessels in order to ship petroleum products by sea. To facilitate its periodic charter needs, Grey Rock relies on charter brokers to connect Grey Rock to reputable and reliable vessel owners or disponent owners that can fulfil Grey Rock's shipping requirements.

10. In 2022, Grey Rock began planning to ship multiple cargos of fuel oil from Houston, Texas to various ports in Europe. To accomplish these shipments, Grey Rock appointed Dietze & Associates, LLC ("Dietze") as its charter broker and agent for the negotiation and procurement of a voyage charterparty and to secure vessels specially equipped to transport fuel oil from Texas to Europe. Grey Rock appointed Dietze because Grey Rock wished to utilize its unique skill and knowledge of the shipping industry for the benefit of Grey Rock's business.

11. Dietze facilitated a charter arrangement between Grey Rock and Trinity that was to encompass multiple vessels and shipments over a period of several months, for a fixed price per voyage. Solely based on Dietze's recommendation, Grey Rock entered into a valid Voyage Charter Party with Trinity on or about September 30, 2022 (the "Charterparty"). The Charterparty defined "Charterer" as Grey Rock Gathering & Marketing LLC and "Owner" as Trinity Enterprise LTD.

---

[1] *See Dinn v. Hooking Bull Boatyard Inc.*, No. C-08-309, 2009 WL 2161676, at * 7-8 (S.D. Tex. July 16, 2009) (holding that federal maritime law did not preempt a DTPA claim arising in conjunction with a breach of warranty where misrepresentations were made regarding vessel repair contract).

At all times relevant to this action, Trinity, through its president Alf Anonsen, held itself out in correspondence as an entity called "Trinity Tankers LTD."[2]

12. Pursuant to the Charterparty's terms, a minimum of five liftings[3] and a maximum of eight liftings on vessels with a minimum cargo capacity of 60,000-65,000MT were to be carried out by Trinity on Grey Rock's behalf.

13. Regarding the time for performance, the Charterparty stated, in part:

B. NOMINATION

OWNER TO PROVIDE CHARTER WITH A PERFORMING VESSEL LATEST 10 DAYS PRIOR TO THE FIRST DAY OF THE 3 DAY LAYCAN WITHIN THE DEC 10-15, 2022 RGE. THEREAFTER THE OWNER WILL PROVIDE A PERFORMING SHIP EVERY 70-80 DAYS TO LOAD IN THE USG. THE PERFORMING VESSEL WILL BE NOMINATED IN THE SAME FORMAT AS THE FIRST LIFTING, 10 DAYS PRIOR TO THE FIRST DAY OF THE 3 DAY LAYCAN. THIS WILL CONSTITUTE THE 5 LIFT MININUM [sic].

14. Thus, the Charterparty contained a three-day laycan[4] and required that Trinity provide Grey Rock with ten days' notice prior to the commencement of the laycan so that Grey Rock could make preparations for shipment. Pursuant to the Charterparty, the first lift was to occur between December 10-15, 2022, with Trinity's consequent notice period falling ten days prior the commencement of the three-day laycan. The minimum four remaining lifts were to be noticed through this same protocol and vessels fit for the purpose were to be provided by Trinity.

15. The timeliness of nominations and the provision of compliant vessels were crucial components of the Charterparty as Grey Rock must fulfill its own contractual obligations to

---

[2] Because Trinity Tankers LTD does not appear to be an entity, Grey Rock brings suit against both Trinity Tankers LLC and Trinity Enterprise LTD in an abundance of caution.
[3] "Lifting" is a term of art in the shipping industry that refers to loading cargo onto a vessel.
[4] "Laycan" is a term of art in the shipping industry that refers to a period of time in which a vessel owner provides notice to a vessel charterer that the chartered vessel has arrived at a defined anchorage location and is ready to be loaded with cargo.

customers/buyers of its fuel oil. If Trinity breaches its obligations to Grey Rock, Grey Rock is then in danger of breaching its obligations to its customers/buyers. Time was always of the essence.

16. Unfortunately, rather than comply with its clear obligations under the Charterparty, Trinity repeatedly failed to provide the requisite notice or any qualified vessels. For example, Trinity failed to perform its very first lifting per the terms of the Charterparty when it was unable to provide Grey Rock with a vessel for the agreed price as listed in the contract. Rather than breach its obligations to its customer, Grey Rock was forced to ship its fuel oil on a replacement vessel at a higher cost than originally agreed or anticipated. Due to Trinity's first breach of the Charterparty, Grey Rock incurred a loss of $2,065,921 in vessel replacement costs so that it would not breach its obligations to its customers.

17. On November 18, 2022, following Trinity's initial breach, the parties entered into an amendment to the Charterparty where Trinity agreed to perform an additional lifting under reduced rates – making the Charterparty applicable to six required lifts/laycans rather than the initial five:

> **OWNER TO PROVIDE CHARTER WITH A PERFORMING VESSEL LATEST 15 DAYS PRIOR TO THE FIRST DAY OF THE 3 DAY LAYCAN WITHIN THE JAN 1-5, 2023 WINDOW THE SHIP NOMINATION TO BE THE SAME AS THE FIRST LIFTING 10 DAYS PRIOR TO THE FIRST DAY OF THE LAYCAN THEREAFTER THE OWNER WILL PROVIDE A PERFORMING SHIP EVERY 70-80 DAYS TO LOAD IN THE USG. THE PERFORMING VESSEL WILL BE NOMINATED 10 DAYS PRIOR TO THE FIRST DAY OF THE 3 DAY LAYCAN. THIS WILL CONSTITUTE THE 6 LIFT MININUM. CHOPTION TO NOMINATE A 7TH LIFTING 120 DAYS PRIOR TO THE COMPLETION OF THE 6TH LIFTING (COMPLETION OF OBLIGATED COA). CHOPTION TO NOMINATE UPTO 3 ADDITIONAL LIFTINGS ON A "RIGHT OF FIRST REFUSAL BASIS". SHOULD THE OWNER AGREE TO AN ADDITIONAL LIFTING(S) WS 155 RATE TO APPLY WITH NO DISCOUNT, ALL TERMS AND AGREEMENTS IN THIS C/P SHOULD BE IN FORCE.
> VESSEL TO BE NOMINATED SHOULD NOT BE OLDER THAN 20 YEARS OLD.
> VESSEL TO BE NOMINATED MUST HAVE A VALID SIRE
> VESSEL TO BE NOMINATED MUST HAVE A VALID SIRE
> TRINITY ENTERPRISE LTD WILL PROVIDE GREY ROCK WITH PROOF OF OWNERSHIP OR DESPONDENT OWNERSHIP OF THE PERFORMING VESSEL(S) FOR ALL VOYAGES NO LATER THAN

**DECEMBER 15, 2022.**

18. Despite this amendment, Grey Rock explicitly reserved its rights to pursue Trinity for damages caused by the initial breach.

19. As stated in the amendment, Trinity's second opportunity to perform under the Charterparty arose within a January 1-5, 2023 laycan. Trinity failed to provide notice that a vessel was ready to perform ten days prior to January 1 and failed to provide a vessel to Grey Rock at any point in time for this shipment. To mitigate its own damages for Trinity's failure to perform in this timeframe, and so that Grey Rock did not breach any of its own agreements, Grey Rock was forced to "book out" or buy out its January 2023 shipment to its end customer at a cost to Grey Rock of $1,020,250.

20. From December 2022 to January 2023, Grey Rock continually notified Trinity that Trinity was in breach of the Charterparty. On January 9, 2023 (after the January 1-5 laycan had expired), Trinity reaffirmed to Grey Rock that it would perform the upcoming March 1-5, 2023 laycan.

21. On February 22, 2023, Grey Rock notified Trinity that Trinity had failed to nominate a vessel ten days prior to the March 1-5, 2023 laycan. Trinity responded that it *might* have a vessel that could meet contractual requirements, but Trinity failed to provide this vessel within the March 1-5, 2023 laycan and the parties never reached an agreement on remedying this breach. Grey Rock was forced to nominate another vessel to satisfy its obligations to its customers, at a cost of $1,750,000 in excess of its Charterparty with Trinity.

22. On March 16, 2023, Grey Rock terminated the Charterparty with Trinity due to Trinity's continued failure to perform its obligations. Grey Rock reserved its rights to claim damages against Trinity for Trinity's nonperformance. The cancellation of the Charterparty and its fixed rates will ultimately cost Grey Rock millions of dollars in future vessel replacement costs.

23. Grey Rock performed all of its obligations under the Charterparty and has met all conditions precedent to filing this suit.

## COUNT I – BREACH OF CONTRACT

24. Grey Rock realleges and incorporates by reference paragraphs 1-23 herein.

25. The Charterparty (and any amendments) is a valid, enforceable contract between Grey Rock and Trinity.

26. In exchange for Grey Rock paying fees and commissions on each shipment, Trinity undertook certain duties and obligations in the Charterparty, namely, to provide Grey Rock with compliant vessels for the shipment of fuel oil from Texas to Europe within the timeframes stated in the Charterparty.

27. Trinity breached the Charterparty by, at a minimum, failing to provide the requisite notice to Grey Rock and failing to secure vessels for the lifts as required.

28. Grey Rock has suffered and continues to suffer damages as a result of Trinity's breach of the Charterparty, including, without limitation, reputational damage, expenses associated with shipping delays, and the procurement of spot-rate shipping contracts to replace those that were not fulfilled by Trinity.

29. Grey Rock at all times complied with and was prepared to comply with its obligations under the Charterparty. Grey Rock also worked diligently to mitigate its damages by promptly securing reputable contracts for lifts that were not fulfilled by Trinity and/or buying out its shipment obligations to customers.

## COUNT II – TEXAS DECEPTIVE TRADE PRACTICES ACT

30. Grey Rock realleges and incorporates by reference paragraphs 1-29 herein.

31. Grey Rock is a "consumer" as that term is defined in the Texas Deceptive Trade Practices Act ("DTPA").

32. Trinity engaged in false, misleading, and deceptive acts in negotiating and failing to carry out the terms of the Charterparty. Specifically, Trinity:

   a. Caused confusion as to the source, sponsorship, approval, or certification of the services provided for in the Charterparty by representing that it was or would be the owner or disponent owner of chartered vessels;

   b. Represented that the services provided for in the Charterparty had characteristics, benefits, or quantities that they did not have, including carrying capacities, vessel availability, and prices for same; and

   c. Represented that the services provided for in the Charterparty were of a particular standard when they were of another, including representing that lifting arrangements would be reliable and timely when they were unreliable and untimely;

33. Grey Rock relied on Trinity's false, misleading, and deceptive acts to its detriment.

34. Because of Trinity's false, misleading, and deceptive acts, Grey Rock has sustained reputational and financial damage. Trinity's false, misleading, and deceptive acts were a producing cause of Grey Rock's damages.

35. Trinity's false, misleading, and deceptive acts were made knowingly and with the intent to induce Grey Rock to enter into the Charterparty. Such knowing conduct entitles Grey Rock to treble damages and attorney fees.

## COUNT III – ATTORNEYS' FEES

36. Pursuant to TEX. BUS. & COMM. CODE § 17.50(d), a prevailing consumer "shall be awarded court costs and reasonable and necessary attorneys' fees" arising from prosecution of the DTPA claim.

## DAMAGES

37. As a direct and proximate result of Trinity's conduct as described herein, Grey Rock sustained damages, including lost profits and reputational damage. By reason of the

8

foregoing, Grey Rock has sustained loss and damage in a sum within the jurisdictional limits of this Court.

38.     More specifically, Grey Rock has sustained past damages of $4,836,171 due to Trinity's multiple breaches of the Charterparty. Additionally, Grey Rock will continue to sustain damages in the future due to having to pay market price for vessels, rather than the agreed upon fixed voyage price from Trinity, in order to meet its obligations to its customers.

## **PRAYER**

**WHEREFORE**, Grey Rock Gathering and Marketing, LLC prays that this Honorable Court order Trinity to appear and answer the charges brought herein and enter a judgment declaring that:

(1)     Trinity breached the Charterparty;

(2)     Trinity committed unlawful trade practices in violation of the Texas Deceptive Trade Practices Act;

(3)     Grey Rock is entitled to compensatory damages arising from Trinity's breach of the Charterparty;

(4)     Grey Rock is entitled to compensatory damages, treble damages, and attorney fees arising from Trinity's knowing violation of the Texas Deceptive Trade Practices Act;

(5)     Pre- and post-judgment interest at the maximum rate allowable by law; and

(6)     Any further relief as equity and justice of this cause may require and permit.

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Michael A. Orlando Jr.*
Michael A. Orlando Jr.
Texas Bar No. 24070367
S.D. Tex. Bar No. 1051267
G. Evan Spencer
Texas Bar No. 24113493
S.D. Tex. Bar No. 3748768
910 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
michael.orlando@phelps.com
evan.spencer@phelps.com

**ATTORNEYS FOR GREY ROCK GATHERING AND MARKETING, LLC**